UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| DREAMA KAY NICHOLS, | ) |
| Plaintiff, | ) Civil No. 08-460-ART |
| v. | ) |
| MICHAEL J. ASTRUE, | ) **MEMORANDUM OPINION & ORDER** |
| Commissioner of Social Security, | ) |
| Defendant, | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The Plaintiff, Dreama Kay Nichols, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Nichols's application for supplemental social security income ("SSI"). For the reasons provided below, the Court denies Nichols's Motion for Summary Judgment, R. 10, and grants the Defendant's, R. 11.

**BACKGROUND**

Nichols filed her application for SSI on August 11, 2006. Transcript ("Tr.") at 26. Therein, Nichols alleged a disability beginning on August 1, 2003, *id.*, due to chronic obstructive pulmonary disease ("COPD"), emphysema and depression, *id.* at 103-12. Nichols's application was denied initially, and then again upon reconsideration. *Id.* at 26. Subsequently, at Nichols's request, Administrative Law Judge Jimmy N. Coffman ("ALJ") conducted a hearing on January 7, 2008. *See id.*; *see also id.* at 5–21(transcript of hearing).

During the hearing, the ALJ heard testimony from Nichols. *See id.* at 5–21. Nichols, who was 44 years old at the time of the hearing, has a sixth-grade education and has no work experience

in the past 15 years. *Id.* at 7-10. At the hearing, Nichols testified that she had COPD and emphysema, that she smoked four packs of cigarettes a day until about six months before the hearing and that at the time of the hearing she smoked three cigarettes per day. *Id.* at 10-11. She testified that she is not on oxygen but uses a nebulizer, that she takes Albeuterol Sulfates, Hydrocholothiazide, Lisinopril, Singulair, and Advair for her breathing, Hodroxene for allergies, Hydrocodone for arthritis, Xanax for post-traumatic stress disorder, and Naproxen and Tramadol for inflammation. *Id.* at 11-12. She testified that her emphysema is her worst problem and that it causes her to have difficulty walking distances, that it causes her to be fatigued, and that the medication barely helps at all. *Id.* at 12-14. She further testified that the event that caused her PTSD makes it difficult for her to concentrate. *Id.* at 16-17. Finally, she testified that on a daily basis she tries to clean-up and eats TV style dinners, that she does not really engage in activities outside the home, and that about every other weekend she watches her ex-boyfriend's kids. *Id.* at 18-20.

The records confirm that on August 1, 2003, Nichols was treated at the University of Kentucky Chandler Medical Center for complaints of right-side numbness, blurry vision, nausea, and vomiting. *Id.* at 146. She appeared confused but denied chest pain, abdominal pain and shortness of breath. *Id.* The physician concluded that all tests were normal, but because of Nichols's persistent complaints of right-side numbness, a neurological consultation was in order. On August 17, 2003, she sought treatment at Samaritan Hospital for complaints of abdominal pain and vomiting. *Id.* at 159. She was diagnosed with gastroenteritis, or the stomach flu, and prescribed a clear liquid diet. *Id.* at 162. Nichols sought treatment at the Lexington-Fayette Health Department from July 14, 2003 through September 14, 2007. *See id.* at 188–278, 306–47. The records from the Health Department indicate that Nichols had a cough and difficulty breathing. *See, e.g., id.* at 195

(breathing problems), 202 (cough), 204 (cough). On November 29, 2006, Dr. John Rawlings reviewed her record and concluded that Nichols did not have a severe physical impairment. *Id.* at 304. On May 21, 2007, pulmonary function studies indicated that her FEV-1 was .80. *See id.* at 144. She was diagnosed with COPD and emphysema on July 9, 2007. *Id.* at 197. On July 13, 2007, the doctor characterized her COPD as "severe," increased her medication, and considered placing her on oxygen. *Id.* at 195 (indicating that the spirometry showed severe obstruction with an FEV-1 of 43%). Finally, Nichols was hospitalized during September 2007 at St. Joseph Healthcare with complaints of gastrointestinal bleeding. *Id.* at 355. She was diagnosed with gastritis, esophagitis, diverticular disease and internal hemorrhoids. *Id.*

As to Nichols's psychological complaints, two consultative examinations confirmed that she presented with no severe mental impairment. *Id.* at 171 (review of Dr. Laura Cutler), 289 (review of Dr. Jane Brake). Dr. Cristi Hundley, who examined Nichols at the request of the Administration on September 14, 2006, found that Nichols appeared alert, pleasant and cooperative and that she reported no counseling or current mental health issues. *Id.* at 280, 284, 286. Dr. Hundley diagnosed Nichols with major depressive disorder, single episode, recurrent, cannabis abuse and nicotine dependence. *Id.* at 287.

**ALJ ANALYSIS**

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four,

disabled. *Id.* § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. *Id.* § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. *Id.* § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. *See id.* § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. *See id.* § 404.1520(f).

In this case, at Step 1, the ALJ found that Nichols has not engaged in substantial gainful activity since the application date. Tr. 28. At Step 2, the ALJ found that Nichols had the medically determinable impairments of COPD and depression, but that these impairments were not severe based on the standards set forth in the Regulations, *see id.* at 28-32; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. Because the ALJ found at Step 2 that Nichols did not have a severe impairment or combination of impairments as defined by the Regulations, he concluded she was not disabled without reaching the other steps of the analysis. *See* Tr. at 32; *see also* 20 C.F.R. § 404.1520(c). Accordingly, on February 6, 2008, the ALJ issued an unfavorable

---

> the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (citations omitted).

decision, finding that Nichols was not disabled, and therefore not entitled to SSI. Tr. at 32. On September 18, 2008, the Appeals Council declined to review the ALJ's decision, *id.* at 1, at which point the ALJ's decision became the final decision of the Commissioner of Social Security.

Nichols now seeks review in this Court. She argues that the ALJ's determination was incorrect because her impairment meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, meaning that it is necessarily severe and that she is entitled to benefits. R. 10 at 2–3. The Commissioner has also filed a motion for summary judgment, R. 11, and the motions are now ripe for the Court's review.

### DISCUSSION

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite

conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). On appeal to this Court, Nichols argues that she meets the requirements of the Listing of Impairments 20 C.F.R. Part 404, subpart P, Appendix 1, § 3.02. *See* R. 10 at 1–2. However, there is substantial evidence in the record supporting the ALJ's decision that she has no medically determinable *severe* impairment and therefore does not have an impairment which meets or equals the impairment listed in this section. Therefore, the ALJ's decision must be affirmed.

*Sufficiency of the Evidence at Step Two*

First, it is irrelevant whether Nichols's condition met one of listings in the Regulations, because the ALJ only considers the impairment listings at Step Three of the evaluation, and the ALJ here found that Nichols failed at Step Two—i.e., she did not have a medically determinable severe impairment. Sufficient evidence supporting this finding is present in the record. The steps considered by the ALJ are sequential, meaning that they are considered in order and the ALJ only proceeds to the next step if the previous step has been satisfied. *See* 20 C.F.R. § 404.1520; *Jones*, 336 F.3d at 474. Thus "[i]f the claimant does not have a severe impairment, she is found 'not disabled.'" *Farris v. Secretary of Health & Human Servs.*, 773 F.2d 85, 88–89 (6th Cir. 1985); *see also* 20 C.F.R. § 404.1520(c).

Here, ALJ Coffman did not get to Step Three or examine the listings because he concluded that Nichols failed at Step Two. Tr. at 28-32. He based his conclusion that Nichols did not have a

severe impairment on the fact that he found she had no limitations on her daily living, social functioning, or concentration, persistence or pace, and that the record did not contain any episodes of decompensation. *Id.* at 31-32. This conclusion is supported by substantial evidence in the record. The medical records Nichols produced did not clearly indicate a severe impairment. While some of the medical records indicate that Nichols had severe COPD and difficulty breathing, *see, e.g, id.* at 195, they do not indicate that this ailment limits her ability to work. Moreover, in several instances, her doctors considered but declined placing Nichols on oxygen therapy. *See id.*; *see also id.* at 198. Her own testimony indicates she is able to care for herself and for her ex-boyfriend's children. *Id.* at 18–20. Her testimony also indicates she prepares meals and does household chores. *Id.* Furthermore, each consultative examiner found that she did not have a severe impairment. *Id.* at 171 (review of Dr. Laura Cutler), 289 (review of Dr. Jane Brake), 304 (review of Dr. John Rawlings). Nichols's testimony and the medical testimony support a decision that her ailments do not significantly limit her regular activities and would not limit her ability to work. Accordingly, the ALJ did not err by concluding, at Step Two, that she did not have a medically determinable severe impairment and by denying benefits without considering the remaining steps.

***Lack of Evidence that Impairment is "Listed"***

Even if the Court were to conclude that having a listed impairment would enable a claimant to proceed, despite the ALJ's conclusion that she failed at Step Two, Nichols has not presented sufficient evidence that she had a listed impairment because the May 2007 spirometry exam does appear to be a satisfactory spirogram according to the Regulations. The claimant bears the burden of showing that she has an impairment which meets or equals a listed impairment. *Thacker v. Social Security Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human*

*Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). To carry this burden, the claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency. *Id.* at 728 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). Here, Nichols asserts that her May 2007 spirometry exam constitutes proof that she meets the definition, R. 10 at 1-3, but the results were not reached using the procedure established in the Regulations.

Section 3.00 of the Social Security Regulations explains how the results from a spirometry test—the test used to measure pulmonary functioning—should be used and obtained. 20 C.F.R. pt 404, sbpt P, app. 1, § 3.00(E). Specifically, the listing specifies that "[t]wo of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 L, whichever is greater." *Id.* The listing goes on to explain that the highest FEV-1 and FVC values "should be used to assess the severity of the respiratory impairment." *Id.*

According to the Regulations, for a person five feet tall—Nichols's height—an FEV-1 score of less than or equal to 1.05 meets the listing. *Id.* § 3.02. Nichols cites her May 2007 examination which produced an FEV-1 score of 0.80. R. 10 at 1–3; *see also* Tr. at 144. This rating would be sufficient to satisfy the listing, *see id.* § 3.00, but, it was not reproducible as required by the regulations, *see* Tr. at 144 (indicating that of the three acceptable pre-medicated scores, two were reproducible, but of the one acceptable post-medicated score, none was reproducible).[2] Therefore,

---

[2]The copy of the May 2007 exam provided to the Court is poor at best. The Claimant provided a clearer copy of the test than the one in the record, but it is still impossible to determine what numbers appear in the "Best" column. As such the Court is relying on the representations of the parties that

Nichols has not presented pulmonary function test results, performed according to the criteria listed in Section 3.00, which are sufficiently low to meet the listing. *See Thacker*, 93 F. App'x at 728 (concluding that claimant had not produced tests sufficient to meet the listing because the test he produced was not performed according to the criteria of 3.00(E)).

Second, putting aside the lack of reproducibility, the result is likely deficient in another way as well. Section 3.00E of the Social Security Regulations provides that "[p]ulmonary function studies should not be performed unless the clinical status is stable (e.g., the individual is not having an asthmatic attack or suffering from an acute respiratory infection or other chronic illness)." The record from the day of the test indicates that Nichols had been seen in the emergency room for pneumonia not long before the test was performed. *See* Tr. at 200, (noting that Nichols had first been seen at Samaritan Hospital and treated for pneumonia in March or April). If Nichols still had pneumonia at the time of tests, the results would be unreliable and would not be sufficient to meet the listing. *See Thacker*, 93 F. App'x at 728 (concluding that tests not performed according to the criteria of 3.00(E) were insufficient).

**CONCLUSION**

The Court's "role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)). After reviewing the record, the Court finds that the ALJ's decision at Step Two that Nichols did not have a severe impairment is supported by substantial evidence. This Court will not reverse the reasoned decision of the ALJ on the basis of

---

Claimant's "best" value was 0.80. Even if this reading were obtained in one of the reproducible pre-medication tests, and the lack of reproducible post-medication results did not impact the validity of the overall test, the copy does not provide evidence that this is the case here.

one test—not conducted pursuant to the Regulations—which indicated serious obstructions on a partially illegible copy, especially since the test may have been conducted while Nichols still had pneumonia and the results indicated significant improvement from the reported score judge the use of medication. *Cf.* Tr. at 144. While the evidence seems to indicate that Nichols's condition worsened near the time of the hearing, *see id.* at 195 (record from July 13, 2007, indicating severe COPD); *id.* at 196 (record from July 23, 2007, indicating that patient was worse than at the July 9, 2007 visit); *id.* at 198 (record from July 13, 2007, indicating that patient may need oxygen), the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment, R. 10, is **DENIED**;

(2) Defendant's Motion for Summary Judgment, R. 11, is **GRANTED**; and,

(3) **JUDGMENT** in favor of the Defendant Commissioner will be entered contemporaneously herewith.

This the 4th day of May, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge